UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES C. SCHNEIDER,

        Petitioner,

    v.

STEVEN RIVARD,

        Respondent.

_____/

CASE NO. 2:11-CV-15690
JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Improper Jury Influence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.    *Evidentiary Claims (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             a. The Victim's Prior Sexual Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             b. Sex Offender Profile Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     F.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

        1.    Petitioner James C. Schneider is a state prisoner, currently confined at the St. Louis

Correctional Facility in St. Louis, Michigan.

2.      Petitioner was charged with several counts of criminal sexual conduct arising from his alleged repeated sexual molestation of his adopted daughter.  Prior to trial, the trial court granted petitioner's motion to allow him to present an expert witness to testify as to the patterns and behaviors of child molesters.  The prosecutor filed an emergency application for leave to appeal this decision, which the Michigan Court of Appeals denied after ordering petitioner to answer the application.  *See People v. Schneider*, No. 269194 (Mich. Ct. App. July 25, 2006).  The prosecutor filed an emergency application for leave to appeal to the Michigan Supreme Court, which remanded the matter to the court of appeals for consideration as on leave granted.  *See People v. Schneider*, 477 Mich. 872, 721 N.W.2d 584 (2006).  On remand, the Michigan Court of Appeals reversed, concluding that sex offender profile evidence is not admissible under MICH. R. EVID. 702.  *See People v. Schneider*, No. 273421, 2007 WL 1202322 (Mich. Ct. App. Apr. 24, 2007) ("*Schneider I*").

3.      On January 11, 2008, petitioner was convicted of three counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a), (b); one count of second degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520c(1)(a); and two counts of third degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d(1)(d), following a jury trial in the Wayne County Circuit Court.  Petitioner was sentenced to concurrent terms of 25-40 years' imprisonment on each CSC-I conviction and 10-15 years' imprisonment on each CSC-II and CSC-III conviction.

4.      Following his conviction, petitioner filed a motion for a new trial and for an evidentiary hearing in the trial court, raising a claim of juror misconduct.  The trial court denied the

motion on April 3, 2009.

5. Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I. MR. SCHNEIDER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN JURORS IMPROPERLY USED OUTSIDE EXPERIENCES DURING DELIBERATIONS. THE TRIAL COURT ERRED WHEN IT DENIED MR. SCHNEIDER'S POST-CONVICTION MOTION FOR AN EVIDENTIARY HEARING ON THIS ISSUE.

II. IN PROHIBITING ADMISSION OF COMPLAINANT'S PRIOR SEXUAL KNOWLEDGE TO IMPEACH HER TESTIMONY THAT SHE DID NOT KNOW WHAT THE TERM "PENETRATION" MEANT, THE TRIAL COURT VIOLATED MR. SCHNEIDER'S SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND TO PRESENT A DEFENSE.

III. MR. SCHNEIDER WAS DEPRIVED OF HIS RIGHT TO PRESENT A DEFENSE BECAUSE THIS COURT DETERMINED THAT MRE 702 PRECLUDED HIS EXPERT FROM TESTIFYING AT TRIAL REGARDING CHARACTERISTICS OF CHILD SEXUAL ABUSERS.

IV. AN UPWARD DEPARTURE WAS UNWARRANTED BECAUSE THE TRIAL COURT'S DEPARTURE WAS NOT SUBSTANTIAL AND COMPELLING. THE TRIAL COURT ALSO FAILED TO FULFILL ITS OBLIGATION TO ARTICULATE A SUBSTANTIAL AND COMPELLING REASON FOR THE PARTICULAR DEPARTURE IT IMPOSED AND EXPLAIN WHY THAT REASON JUSTIFIED THAT DEPARTURE. EVEN IF AN UPWARD DEPARTURE COULD BE UPHELD, THE LENGTH OF THE UPWARD DEPARTURE ACTUALLY IMPOSED WAS DISPROPORTIONATE.

V. MR. SCHNEIDER IS ENTITLED TO CORRECTION OF THE PRESENTENCE REPORT WHERE THE TRIAL COURT HAD AGREED TO DELETE A SENTENCE AND IT WAS NOT DONE.

Petitioner also filed a *pro se* supplemental brief, raising a claim that the prosecutor committed

misconduct by commenting on his silence. The court of appeals agreed that petitioner was entitled

to relief on his fifth claim, and that a remand was necessary so that the trial court could articulate

the basis for its sentencing departure. In all other respects, the court of appeals found no merit to

petitioner's claims, and affirmed his convictions and sentences. *See People v. Schneider*, No. 285666, 2010 WL 1330627 (Mich. Ct. App. Apr. 6, 2010) (per curiam) ("*Schneider II*").

6.     Petitioner sought leave to appeal these issues (except for the fifth issue) to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Schneider*, 488 Mich. 888, 788 N.W.2d 671 (2010).

7.     Following resentencing by the trial court to the same sentence which had been originally imposed, petitioner sought leave to appeal in the Michigan Court of Appeals, again raising his two sentencing claims. The court of appeals found no merit to his claims, and affirmed his sentences. *See People v. Schneider*, No. 303553, 2012 WL 1890241 (Mich. Ct. App. May 22, 2012).

8.     Petitioner, through counsel, filed the instant application for a writ of habeas corpus on December 29, 2011. As grounds for the writ of habeas corpus, he raises the first three claims that he raised in the state courts.

9.     Respondent filed his answer on July 5, 2012. He contends that petitioner's claims are without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the repeated sexual assault of his adopted daughter, C.G., from the time she was eight or nine years old. The victim was 18 years old at the time of trial. The trial testimony is accurately summarized in both petitioner's brief and respondent's answer. Briefly stated, the bulk of the evidence came from the victim's testimony. She testified, generally, that petitioner assaulted her approximately every other night from the time she was eight or nine years old. The assaults included fondling of her breasts and vagina both over and under her clothes, and penetration of her vagina with his fingers.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

5

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529

6

U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Improper Jury Influence (Claim I)*

Petitioner first contends that he was denied a fair trial by juror misconduct, and that the state courts erred by failing to conduct an evidentiary hearing on his juror misconduct claim.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir.2000) (citing *Morgan*

7

*v. Illinois*, 504 U.S. 719 (1992)). The Sixth Amendment jury trial right "implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). However,

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982). In *Remmer v. United States*, 347 U.S. 227 (1954), the Court held:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 U.S. at 229. Although *Remmer* spoke of a "presumption of prejudice," the Court has subsequently indicated that a defendant alleging improper juror contact must demonstrate actual prejudice. In *Smith*, the Court cited *Remmer* in stating that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove bias." *Smith*, 455 U.S. at 215. As the Court explained:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith*, 455 U.S. at 217.   In light of *Smith*, the presumed prejudice language of *Remmer* is no longer good law; all that is required is a hearing at which the defendant is given the opportunity to establish that the improper contact caused actual prejudice.   *See United States v. Pennell*, 737 F.2d 521, 532-33 (6th Cir. 1984); *see also*, *United States v. Olano*, 507 U.S. 725, 739 (1993) (whether viewed as a presumed prejudice test or a case-by-case determination, question in all cases is "did the intrusion affect the jury's deliberations and thereby its verdict."); *United States v. Corrado*, 304 F.3d 593, 603 (6th Cir. 2002).  A claim that a juror was subject to extraneous influence is subject to harmless error analysis.  *See Pyles v. Johnson*, 136 F.3d 986, 992 (5th Cir. 1998); *Sherman v. Smith*, 89 F.3d 1134, 1138-40 (4th Cir. 1996).  Thus, even if an extraneous influence occurred, petitioner is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also*, *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review).  "[I]in a habeas corpus proceeding, a state court's findings on whether, and how, extraneous matters affected jury deliberations 'deserve[ ] a "high measure of deference."'"  *Mahoney v. Vondergritt*, 938 F.2d 1490, 1492 (1st Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983) (in turn quoting *Sumner v. Mata*, 455 U.S. 591, 598 (1982))).

    2.    *Analysis*

    Petitioner's jury claim is based on a report by one of the jurors during deliberations that some jurors were basing their decisions on improper factors.  As explained by the Michigan Court of Appeals:

On the first full day of deliberations, Juror Nine sent the trial court a note stating that she wished to leave. When asked to explain, Juror Nine told the judge that deliberations had reached an impasse and "people are using their opinions based on experiences in the past." The trial court brought the jury back into the courtroom. Before re-instructing the jurors on evidence, CJI2d 3.5, the judge stated:

> .... [Y]ou are only to consider that evidence which was properly admitted in this case and you cannot consider your personal experiences when you're weighing the evidence in this case.
>
> If you consider your personal experiences in this case, then you are doing a great injustice by not serving true to your oath. Your oath was to follow the law. The law is clear and I'm going to give you the instruction verbatim as it relates to evidence, okay, because if you do not follow this instruction then clearly there's going to be an issue down the road because you cannot allow personal experiences to get in the way of what is otherwise the evidence that's been presented in this case, okay. [Emphasis added.]

> The court re-instructed the jury, repeating the portion of CJI3.5, "To repeat one more time you must decide this case based only on the evidence admitted during this trial. Are you all clear on that?" Asked about clarity, all of the jurors raised their hands. Defense counsel's subsequent motion for a mistrial was denied as was its post-trial motion, which raised the same issue of juror misconduct, and included an affidavit from Juror Nine. The affidavit stated that (1) "Once the jury began its deliberation, I became increasingly concerned that some of my fellow jurors were basing their opinions about the defendant's guilt on their own past experiences," and (2) after the court addressed the jury regarding her concerns and gave them the evidence instruction, "my fellow jurors voiced their anger with me for saying something to the court about what had gone on. I was intimidated by their reaction and felt that this limited how much I could contribute to the discussion and how much my fellow jurors were willing to listen to my arguments."

*Schneider II*, 2010 WL 1330627, at *1-*2.

The court of appeals rejected petitioner's claim that the trial court had erred in failing to hold a hearing or concluding that a new trial was warranted. The court first concluded that it could not properly consider Juror Nine's affidavit, because it did not allege an extraneous influence. The court then reasoned that while jurors may not use private information to make their decision, they may consider the evidence in light of their general knowledge. In light of this fact and the trial court's instruction to the jury once the matter was brought to the court's attention, the trial court did not

error in denying petitioner's motion for a new trial or for an evidentiary hearing. *See id.* at *3. The Court should conclude that this determination was reasonable.

It is a universal rule, accepted in both state and federal courts, that a juror is incompetent to impeach his or her verdict, except as to extraneous prejudicial information or outside influence. *United States v. Gonzales*, 227 F.3d 520, 523-24 (6th Cir. 2000) (citing *Mattox v. United States*, 146 U.S. 140, 149 (1892)); FED. R. EVID. 606(b). "An 'extraneous influence' is one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012). As the Sixth Circuit has explained,

> [i]n *Tanner v. United States*, 483 U.S. 107, the Supreme Court provided examples of both internal and extraneous jury influences. Examples of internal influences include the behavior of jurors during deliberations, the jurors' ability to hear or comprehend trial testimony, and "physical or mental incompetence of a juror." *Id.* at 118 (citing *United States v. Dioguardi*, 492 F.2d 70 (2d Cir. 1974)). The Court noted that the "internal processes of the jury" generally constitute internal influences. *Id.* at 120. In contrast, *Tanner* gave the following as examples of extraneous influences: a juror in a criminal trial who had previously applied for a job in the district attorney's office (citing *Smith v. Phillips*, 455 U.S. 209 (1982)), a bribe attempt on a juror (citing *Remmer v. United States*, 347 U.S. 227 (1954)), and newspaper articles and media attention (citing *United States v. Thomas*, 463 F.2d 1061 (7th Cir. 1972)). *Id.* at 117-18.

*United States v. Herndon*, 156 F.3d 629, 634-35 (6th Cir. 1998) (parallel citations omitted). Petitioner contends that the jurors impermissibly relied on their own personal experiences. However, under the *Tanner* standard a juror's reliance on his or her own personal experiences (other than personal experiences with the parties) does not constitute an extraneous influence. *See Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008) (citing *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir. 2005); *Peterson v. Wilson*, 141 F.3d 573, 577-78 (5th Cir.1998)); *Grotemeyer v. Hickman*, 393 F.3d 871, 879-80 (9th Cir. 2004); *United States v. Holck*, 398 F. Supp. 2d 338, 365-66 (E.D. Pa. 2005). Because petitioner has pointed to no extraneous influence, the trial court did

11

not err in denying petitioner's motion for a new trial without conducting an evidentiary hearing. *See Grotemeyer*, 393 F.3d at 881; *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) ("The need for a *Remmer* hearing necessarily does not arise absent the existence of an outside influence on a juror."). And at a minimum, the Michigan Court of Appeals's conclusion that the trial court did not err in failing to hold an evidentiary hearing was neither contrary to, nor an unreasonable application of, any clearly established federal law. *See Williams v. Price*, 343 F.3d 223, 235-36 (3d Cir. 2003). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Evidentiary Claims (Claims II & III)*

      In his second and third claims, petitioner argues that he was denied his rights to confront the witnesses and present a defense when the trial court excluded two items of evidence. First, he contends that he was denied his right to confrontation and to present a defense when the trial court prohibited admission of the victim's prior sexual knowledge to impeach her testimony that she did not know what the term "penetration" meant. Second, he contends that he was denied his right to present a defense when the trial court precluded his expert witness from offering sex offender profile evidence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.    *Clearly Established Law*

      Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law

itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the

13

right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).  Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408.  Although the right to present a defense is fundamental, it is not absolute.  Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused."  *Scheffer*, 523 U.S. at 308.  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged."  *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).  Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

The Supreme Court's "Confrontation Clause cases fall into two broad categories:  cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18

(1985) (per curiam).  The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically."  *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'"  *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).  However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish."  *Fensterer*, 474 U.S. at 20.  The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination."  *Green*, 399 U.S. at 166.  Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination."  *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).  Further, even if a restriction on cross-examination amounts to a violation of the confrontation right, such an error may be harmless.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

2.      *Analysis*

a. *The Victim's Prior Sexual Knowledge*

Petitioner first contends that he was denied his rights to confront the witness and to present a defense by the trial court's exclusion of evidence of the victim's prior sexual history, which he sought to introduce to show that she possessed the knowledge necessary to explain to Dr. Leena

Dev, the examining physician, that sexual penetration had occurred.  At trial, both the victim and

Dr. Dev. testified that the victim told Dr. Dev. that there had been no penetration, although the

victim herself did not use that word.  *See* Trial Tr., dated 1/8/08, at 21-24, 69; *id.*, dated 1/9/09, at

37-38.  The victim also testified that, at the time she was examined by Dr. Dev, she did not

understand the meaning of the word "penetration."  *See id.*, dated 1/8/08, at 22.  Defense counsel

sought to question the victim regarding sexual experiences she had prior to her examination to show

that she understood what was meant by the term penetration.  The trial court initially reserved ruling

on the matter until after Dr. Dev testified.  *See id.* at 70-78.  After Dr. Dev's testimony, the trial

court ruled that petitioner could recall the victim to further examine her regarding her conversation

with Dr. Dev, but that he could not examine her regarding other sexual relationships.  *See id.*, dated

1/9/08, at 59.  On appeal, the Michigan Court of Appeal rejected petitioner's argument that the trial

court's ruling denied him his rights to confront the witness or to present a defense.  Relying on

Michigan's rape-shield statute,[1] the court concluded that the evidence was properly excluded.  The

---

[1]"Like most States, Michigan has a 'rape-shield' statute designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *Michigan v. Lucas*, 500 U.S. 145, 146 (1991). Michigan's rape shield law provides:

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g [the sexual conduct offense provisions] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) evidence of the victim's past sexual conduct with the actor;
> (b) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

MICH. COMP. LAWS § 750.520j(1).  The statute further provides that, if a defendant seeks to introduce evidence under (a) or (b), he must give notice of his intent to do so within ten days of the arraignment. *See id.* § 750.520j(2). Even where evidence falls within (a) or (b), the defendant must show that the evidence is "material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." *Id.* § 750.520j(1); *see also*, *People v.*

court reasoned:

> In the case at bar, defendant does not offer the evidence of the victim's sexual history to explain the presence of semen, pregnancy, or disease, or to show her past sexual conduct with defendant, nor does he offer it to show that the victim is biased or has made false accusations in the past. Instead, he offers it to show, that while the victim knew the meaning of the term "penetration" when she spoke to the doctor, she told the doctor that penetration did not occur. The fact that the victim had sexual partners indicates that she might have experienced the literal meaning of sexual "penetration," but it is not evidence that she knew the dictionary definition of the word, let alone the legal definition.
>
> Defendant had a full opportunity, without the admission of the evidence on past sexual history, to explore issues relevant to her credibility in general and her credibility concerning the word "penetration." Defense counsel spent much time and effort questioning the victim on whether and at what point in time she was cognizant of the definition of "penetration," and therefore, defendant cannot show that he was denied his right to cross-examine the victim. He extracted testimony about her history of lying to her parents, her chaffing against parental rules, her extensive therapy history and her many inconsistent statements. Exclusion of the victim's sexual history from trial, therefore, did not deny defendant his Sixth Amendment rights to confrontation or to present a defense.

*Schneider II*, 2010 WL 1330627, at *5. The Court should conclude that this determination was reasonable.

Petitioner cannot show that the trial court's ruling deprived him of his Sixth Amendment right to confront the victim. In *Davis*, *supra*, the Court held that the Sixth Amendment right to confront witnesses guarantees a criminal defendant the right to cross-examine adverse witnesses to expose bias and motivations for testifying. *See Davis*, 415 U.S at 315-16; *see also*, *Delaware v. Van Arsdall*, 475 U.S. 673, 678-80 (1986). However, the *Davis* Court limited its Confrontation Clause decision to those facts going to a witness's bias or motive in testifying, as opposed to general attacks on credibility. The Court's decision in *Van Arsdall* was similarly limited. Indeed, in his concurring

---

*Adair*, 452 Mich. 473, 481-82, 550 N.W.2d 505, 509-10 (1996). In such a case, "the focus shifts to materiality and balancing probative value against prejudice." *Id*. at 482, 550 N.W.2d at 510.

17

opinion in *Davis*, Justice Stewart emphasized that the *Davis* "Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination" concerning past convictions. *Davis*, 415 U.S. at 321 (Stewart, J., concurring). Thus, there is no clearly established federal law as determined by the Supreme Court, within the meaning of § 2254(d)(1), which establishes a criminal defendant's right to cross-examine a witness to expose issues relating to general credibility, as opposed to bias and motives for testifying. As the Sixth Circuit has explained:

> although *Davis* trumpets the vital role cross-examination can play in casting doubt on a witness's credibility, not all conceivable methods of undermining credibility are constitutionally guaranteed. In particular, the *Davis* Court distinguished between a "general attack" on the credibility of a witness–in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"–and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Davis*, 415 U.S. at 316). The Court in *Davis* found only the latter, particularized attack on bias and motivation, to be a protected aspect of the right to confrontation. *See Boggs*, 226 F.3d at 737. As the Sixth Circuit explained in *Boggs*, "[c]ourts after *Davis* and *Van Arsdall* have adhered to the distinction drawn by those cases and by Justice Stewart in his concurrence–that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs*, 226 F.3d at 737; *see also*, *Quinn v. Haynes*, 234 F.3d 837, 844-45 (4th Cir. 2000); *Reiger v. Christensen*, 789 F.2d 1425, 1433 (9th Cir. 1986). Here, there is no question that the area of cross-examination which counsel for petitioner sought to explore went to general credibility, rather than to a bias or motive for testifying. Thus, under *Boggs*, this restriction on cross-examination did not infringe on

18

petitioner's Sixth Amendment confrontation rights.  It matters not that the credibility of the victim was central to the prosecution's case:

> No matter how central an accuser's credibility is to a case . . . the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.  In other words, [petitioner]'s argument that credibility is crucial to this case, and that therefore any evidence bearing on credibility must be allowed in, simply does not reflect Sixth Amendment caselaw.  Under *Davis* and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser.

*Boggs*, 226 F.3d at 740 (emphasis in original).

Nor can petitioner show that the exclusion of this evidence deprived him of his right to present a defense by "seriously undermin[ing] 'fundamental elements of the defendant's defense' against the crime charged."  *Miskel*, 397 F.3d at 455 (quoting *Scheffer*, 523 U.S. at 315).  As the court of appeals observed, counsel was able to:  extensively question the victim regarding what she knew of the term "penetration" and when she knew it; thoroughly impeach her credibility through prior inconsistent statements; and question the examining doctor regarding the victim's denials that penetration had occurred.  Given the extent to which counsel was able to attack the victim's credibility in general and her testimony regarding penetration in particular, the Michigan Court of Appeals's conclusion that the exclusion of evidence of the victim's past sexual history did not deprive petitioner of his right to present a defense was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Sex Offender Profile Evidence

Petitioner also contends that he was denied a fair trial by the exclusion of expert evidence regarding patterns and behaviors of child molesters.  In *People v. Dobek*, 274 Mich. App. 58, 732 N.W.2d 546 (2007), the court had rejected a similar claim involving sex-offender profile testimony.

The court in that case concluded, based on the testimony of the expert at an evidentiary hearing in the trial court, that the testimony was not sufficiently reliable under MICH. R. EVID. 702. The court noted that the defendant's expert testified that although the results of his testing are useful for establishing predisposition, they cannot establish whether someone is a sex offender with any degree of certainty, that there is continued debate in the psychological community regarding this type of testing and the research is ongoing, and that the test results can be skewed by circumstances in the subject's life or by deliberate deception. *See id.* at 95-96, 732 N.W.2d at 571-72. Although recognizing that "100 percent scientific certainty" is not required, the problems identified by the defendants' expert rendered the sex offender profiling evidence insufficiently reliable to satisfy Rule 702. Further, the court explained, this evidence would not assist the trier of fact, but would likely confuse the jury. The court analogized the profiling evidence to polygraph evidence, which is not admissible because it detracts from the jury's truth finding function. *See id*. at 96-97, 732 N.W.2d at 572. Relying on *Dobek*, the court of appeals in petitioner's case concluded that the offender profile testimony was inadmissible under Rule 702, concluding that the proposed testimony was "not scientifically reliable or supportable and would not assist the trier of fact to understand the evidence or determine a fact in issue" because "the profile indicators are based on overly simplistic probabilities that have little or no connective logic to determining whether a sex offense was committed in this specific case or whether defendant committed the charged offenses." *Schneider I*, 2007 WL 1202322, at *4.

Although petitioner contends that the exclusion of this evidence deprived him of his right to present a defense, petitioner discusses the issue solely in terms of state law, relying on state law decisions to show that the court of appeals improperly applied Rule 702. Petitioner has cited, and

I have found, no case holding that the exclusion of sex offender profile testimony violates a defendant's constitutional right to present a defense, much less a Supreme Court decision so holding. On the contrary, the Michigan Court of Appeals has repeatedly concluded that this type of sex offender profile evidence is not admissible, *see People v. Steele*, 283 Mich. App. 472, 481-82, 769 N.W.2d 256, 264 (2009); *People v. Dobek*, 274 Mich. App. 58, 94-104, 732 N.W.2d 546, 571-76 (2007), including in cases involving such testimony from Dr. Abramsky, *see People v. Schneider*, No. 273421, 2007 WL 1202322, at *4-*6 (Mich. Ct. App. Apr. 24, 2007) (per curiam); *People v. Bales*, No. 267756, 2007 WL 1203536, at *6 (Mich. Ct. App. Apr. 24, 2007) (per curiam); *People v. Winer*, No. 267299, 2007 WL 1138399, at *2 (Mich. Ct. App. Apr. 17, 2007).  And the Michigan Court of Appeals's view is "far and away the majority view among all the state courts."  *Bowen v. Haney*, 622 F. Supp. 2d 516, 544 (W.D. Ky. 2008).  In light of this majority view regarding the admissibility of sex offender profile evidence, and in the absence of any Supreme Court holding to the contrary, the Michigan Court of Appeals's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.  *See Bowen*, 622 F. Supp. 2d at 545; *see also*, *Maldonado v. Wilson*, 416 F.3d 470, 477-78 (6th Cir. 2005) (improper admission of voice-stress analysis evidence not unreasonable under AEDPA standard where no Supreme Court precedent established admission of polygraph or similar evidence as a violation of due process); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (admission of prior bad acts evidence did not violate clearly established federal law because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other

21

bad acts evidence.").[2]   Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

_____

[2]The court of appeals addressed this claim solely as a state law evidentiary claim on the prosecutor's interlocutory appeal.  On petitioner's appeal following conviction, in which petitioner explicitly raised the issue as a federal constitutional claim, the court of appeals adhered to its earlier decision as the law of the case; thus, the court of appeals did not explicitly discuss the federal constitutional claim.  Nonetheless, it is clear that the AEDPA standard of review is applicable to this claim.  As the Supreme Court has recently explained, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits."  *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).  Petitioner has offered nothing to overcome this presumption.

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  With respect to petitioner's jury misconduct claim, it is clear that petitioner has not alleged that any

extraneous influence affected the jury's deliberations.  And it is equally clear that, in the absence of such an influence, the trial court was not required to grant petitioner either a new trial or an evidentiary hearing.  Accordingly, the resolution of this claim is not reasonably debatable.  With respect to petitioner's evidentiary claims, as explained above it is clear that the type of restriction on inquiry into general issues of credibility effected by the rape shield statute does not deny a defendant his rights of confrontation and to present a defense, and that petitioner was able to fully explore the victim's credibility and her prior sexual knowledge.  It is equally clear that the courts have nearly uniformly found the type of sex offender profile evidence offered by petitioner to be inadmissible without raising any due process concerns.  Thus, the resolution of petitioner's evidentiary claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealabilty.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  April 12, 2013                     S/Paul J. Komives                                    
                                           Paul J. Komives
                                           United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 12, 2013, by electronic and/or ordinary mail.

                                           S/Shawntel R. Jackson                               
                                           Case Manager